IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NORMAN MCCAIN,                    :    CIVIL ACTION
                                  :    NO. 06-387
          Plaintiff,             :
                                  :
     v.                           :
                                  :
CSX TRANSPORTATION, INC.,         :
                                  :
          Defendant.             :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                APRIL 23, 2010

          Before the Court is Defendant's motion for summary

judgment (doc. no. 24) and Plaintiff's response thereto (doc. no.

25).  For the reasons set forth below, Defendant's motion for

summary judgment will be granted in part and denied in part.


I.   **BACKGROUND**

          For purposes of this motion, the facts cited below

are either undisputed or viewed in the light most favorable to

Plaintiff.

          On January 27, 2006, Plaintiff Norman W. McCain

("Plaintiff") initiated this personal injury action against his

employer Defendant CSX Transportation, Inc. ("Defendant"), after

Plaintiff was injured during the scope of his employment,

pursuant to the Federal Employers' Liability Act ("FELA"), 45

U.S.C. §§ 51-60, the Federal Safety Appliance Acts, 45 U.S.C. §§

1-16, and the Boiler Inspection Acts, 45 U.S.C. §§ 22-34.

Plaintiff seeks an award of $150,000 compensatory damages.  <u>See</u>
Pl.'s Compl.

In his complaint, Plaintiff alleges that while working
as a machinist for Defendant, a common carrier by railroad
operating a line and system of railroad throughout the United
States, he was exposed to "excessive and harmful cumulative
trauma to his knees, arms, and hands," allegedly resulting in
occupational repetitive stress syndrome.  <u>See</u> <u>id.</u> ¶¶ 4, 8; <u>see
also</u> Def.'s Mot. Summ. J. Ex. B. 13:3-10, McCain Dep. (Plaintiff
admitted that injuries are limited to his right knee).

Plaintiff was employed by Defendant as a machinist in
Waycross, Georgia from approximately October 1969 through January
2005.  <u>See</u> Def.'s Mot. Summ. J. ¶ 2.  Further, Plaintiff alleges
that his injuries were caused, in whole or in part, within the
scope of his employment by Defendant's fourteen "negligent" acts,
including but not limited to failure to provide: a safe place to
work, timely and adequate ergonomics programs, periodic testing
of physical effects of work, and adequate warning as to the
hazardous working conditions.  <u>Id.</u> ¶ 11.

On February 15, 2006, Defendant filed its answer,
admitting Plaintiff's allegations in part and denying them in
part.  Defendant admits that it is a successor in interest to the
Seasboard Coast Line Railroad and does business in Philadelphia,
Pennsylvania.  <u>See</u> Def.'s Answer ¶ 2.  However, Defendant asserts
affirmative defenses, including but not limited to, failure to

state a claim upon which relief may be granted, contributory negligence, statute of limitations, statutory limitations of recovery under FELA, and improper venue.[1]

On August 28, 2009, Defendant filed a motion for summary judgment, to which Plaintiff responded on September 11, 2009. <u>See</u> doc. nos. 24, 25, respectively. The issue is now properly before the Court.

## II. <u>JURISDICTION</u>

This Court has jurisdiction pursuant to the FELA, 45 U.S.C. §§ 51-60,[2] the Federal Safety Appliances Act, 45 U.S.C. §§ 1-16, and the Boiler Inspection Acts, 45 U.S.C. §§ 22-34.

## III. **LEGAL STANDARD**

A. Motion for Summary Judgment under Rule 56

---

[1]    On March 9, 2007, Defendant filed a motion to transfer venue (doc. no. 10), which Plaintiff opposed (doc. nos. 11-12). This Court denied Defendant's motion to transfer venue without prejudice on October 3, 2007 (doc. no. 13).

[2]    Section 51 provides:

Under this act [45 USCS §§ 51 et seq.] an action may be brought in a circuit [district] court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this act [45 USCS §§ 51 et seq.] shall be concurrent with that of the courts of the several States.

45 U.S.C. § 51.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The "mere existence" of disputed facts will not result in denial of a motion for summary judgment; rather there must be "a genuine issue of material fact."  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Liberty Lobby, 477 U.S. at 248.

"After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party."  Pignataro v. Port Authority of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).  While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather its response must-by affidavits or as otherwise provided in [Rule 56]-set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

Furthermore, in order for a court to grant summary judgment in a FELA negligence case, the defendant must demonstrate the absence of a genuine issue of material fact on at least one of the required elements for negligence and that the issue should be resolved in its favor as a matter of law. See, e.g., Smolsky v. Consolidated Rail Corp., 780 F. Supp. 283, 290 (E.D. Pa. 1991); Lauria v. Nat'l R.R. Passenger Corp., No. 95-1561, 1997 WL 83767, at *3 (E.D. Pa. Feb. 20, 1997). "[A] FELA plaintiff need only present a minimum amount of evidence in order to defeat a summary judgment motion." Hines v. CONRAIL, 926 F.2d 262, 268 (3d Cir. 1991). Further, in FELA cases, summary judgment is appropriate "only in those extremely rare instances where there is zero probability either of employer negligence of that any such negligence contributed to the injury of an employee . . ." Id. (internal quotation omitted).

B.    Federal Employers' Liability Act

FELA provides that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ." 45 U.S.C. § 51 (1986).

However, FELA is not a workers' compensation statute and does not require railroad employers to insure the safety of

their employees.  See, e.g., Consolidated Rail Corp v. Gottshall,
512 U.S. 532, 543 (1994); Inman v. Baltimore & Ohio R.R. Co., 361
U.S. 138, 140 (1959).  Nevertheless, the Supreme Court has
liberally construed FELA to further the statute's broad remedial
goal.  Gottshall, 512 at 543; see Outten v. Nat'l R. Passenger
Corp., 928 F.2d 74, 76 (3d Cir. 1991) ("[A]n employee can recover
under the FELA so long as the employer's negligence 'played any
part, even the slightest, in producing the injury or death for
which damages are sought.'") (internal citation omitted).


IV.  **ANALYSIS**

        In his motion for summary judgment, Defendant argues
that summary judgment is warranted on Plaintiff's claims of
personal injury under FELA because (1) Plaintiff failed to file
his lawsuit within the three year statute of limitations; and (2)
Plaintiff's claims regarding uneven or unlevel ballast are
preempted by federal law.  See Def.'s Mot. Summ. J.

         Plaintiff, in opposition, argues that his injury as to
his right knee is within the applicable statute of limitations
and there is no federal preclusion in regards to ballast claims
brought pursuant to FELA.  Plaintiff argues that the claims that
Defendant failed to provide Plaintiff with a reasonably safe
place to work are meritorious.  Further, Plaintiff contends that
he is entitled to present evidence of the nature, condition,
and/or size of Defendant's ballast under FELA, in proving the

unsafe nature of the work environment.  <u>See</u> Pl.'s Opp'n to Def.'s
Mot. Summ. J. (doc. no. 25).

    A.   <u>Statute of Limitations</u>

       The statute of limitations may be raised by a Rule
56(c) motion.  When a statute of limitations begins to run is
ordinarily a question of fact.  When the facts are established,
the inquiry becomes a question of law.  <u>Dole v. Local 427</u>, 894
F.2d 607, 609 (3d Cir. 1990).

       Pursuant to § 56 of FELA, a railroad employee must
bring an action "within three years from the day the cause of
action accrued."  45 U.S.C. § 56.  Under the "discovery rule," a
plaintiff's cause of action accrues when the injury manifests
itself.  <u>Urie v. Thompson</u>, 337 U.S. 163, 170 (1949) (developing
the "discovery rule" in occupational disease cases).  However,
for injuries that occur over time, such as repetitive stress
injuries, the specific date of injury is difficult to determine.
In this situation, the Supreme Court found that "when the
specific date of injury cannot be determined because an injury
results from continual exposure to a harmful condition over a
period of time, a plaintiff's cause of action accrues when the
injury manifests itself."  <u>Czyzewski v. CONRAIL</u>, 1997 U.S. Dist.
LEXIS 87, *6 (E.D. Pa. 1997) (citing <u>Urie</u>, 337 U.S. at 170)
(finding that a plaintiff's cause of action accrues when she knew
or should have known about the injury and causation).  Thus, the
cause of action for a repetitive stress injury, under FELA,

"accrues when a plaintiff has knowledge of both the existence and cause of his injury." Id. (citing United States v. Kubrick, 444 U.S. 111 (1979)).[3]

On January 30, 2003, Plaintiff first visited Dr. Randal F. O'Brien, an orthopedic specialist, after experiencing pain in his left knee. See Pl.'s Mem. in Opp'n *13. Dr. O'Brien diagnosed Plaintiff with bilateral degenerative joint disease on February 13, 2003. Id. Plaintiff filed this FELA claim on January 27, 2006.

In this case, Plaintiff bears the ultimate burden of establishing that he filed suit within three years of both the date he was aware of his injury and the date the cause of his injury was or should have been discovered. See Kichline v. Consolidated Rail Corp., 800 F.2d 356, 361 (3d Cir. 1986) (holding that a FELA plaintiff bears the burden to establish the injury occurred during the relevant time period).

At the summary judgement stage, however, Defendant, as the moving party, must show the absence of a genuine issue of material fact as to whether Plaintiff knew or should have known of the existence and cause of the injury prior to January 27,

---

[3]    The Kubrick court found that the plaintiff, by failing to determine the facts underlying the injury and its causation, did not act in a "reasonably diligent manner" and therefore, waived legal remedy. See 444 U.S. at 122 (finding that the plaintiff "need only have made inquiry among doctors with average training and expertise in such matters to have discovered that he probably had a good cause of action.").

2003, or more than three years from the date Plaintiff filed suit.  <u>See</u> Fed. R. Civ. P. 56(c).  In response, the non-moving party bears the burden of pointing to facts of record that raise a genuine issue of material fact as to whether the injury and its cause were discoverable within the three years prior to January 27, 2006 (the date the suit was filed).  <u>Id.</u>

    1.   <u>Plaintiff's Left Knee</u>

Defendant argues that the undisputed facts demonstrate, in accordance with Plaintiff's testimony and medical records, that Plaintiff's pain in his left knee began prior to January 27, 2003 and he was aware that knee problems could develop from his line of work.  <u>See</u> Def.'s Mot. Summ. J.

    a.   <u>Actual Injury</u>

First, Plaintiff testified that he experienced pain in his left knee for nearly two years prior to his initial visit. <u>See</u> Def.'s Mot. Summ. J. Ex. B, McCain Dep. 42-43.  Second, Plaintiff visited Dr. Oguchi and Dr. Herrington, who determined he was suffering from arthritis in his left knee prior to his first visit with Dr. O'Brien on January 30, 2003.  <u>Id.</u> ¶¶ 11-12, 15; McCain Dep. 41:16-43:25.[4]  Third, Dr. O'Brien testified that

---

[4]    In his deposition, Plaintiff testified as to the following:

    Q: But you think that your doctor, whether or not it was Ogucci or Herrington, told you that you probably had an arthritic condition in your knee.

    A: Yeah.

- 9 -

the onset of pain in Plaintiff's left knee was 2001.  Id. ¶ 14;
see also Def.'s Mot. Summ. J. Ex. C, O'Brien Medical Rec.
(indicating Plaintiff's left knee pain extended for several years
prior to the visit on January 30, 2003).[5]  Therefore, Defendant

---

Q: Sometime maybe as early as 2001?

A: I'm not sure about a date on that . . . .

Q: Well, no.  I mean, if I have a record from Dr. O'Brien
from 1 of '03, 1/30 of '03 that says you had knee pain
that existed two years prior to that and it became
progressively worse, I just do the math and minus two
years is 1/30 of '01.

A: Okay . . . .

Q: So I was just trying to figure out – it was definitely
before 2003?

A: Okay . . . .

Q: Do you disagree with it in any way?

A: No.

McCain Dep. 42:16-21; 43:5-10; 43:23-35.

[5]    Plaintiff also testified that:

Q: So you had a conversation about your knee pain with
one of your doctors, and you think it may have been Dr.
Ogucci prior to seeing Dr. O'Brien?

A: Dr. Ogucci put me on medication.

Q: What medication was that?

A: Celebrex.

Q: And what was that for?

A: The pain.

Q: And that was the pain in your knee?

has shown that there is no genuine issue of material fact that Plaintiff was aware of the injury to his left knee as early as 2001.

### b.  Plaintiff's Awareness of Injury

Defendant also argues that Plaintiff knew or should have known that the injury in his left knee was likely caused by his work history, and that he failed to timely investigate the nature and cause of injury.  In support, Defendant avers that, as early as the 1990s, Plaintiff was aware that repetitive activity syndrome could occur from his line of work.  See Def.'s Mot. Summ. J. 4 (arguing that where Plaintiff attended a screening for carpal tunnel syndrome, he became aware of repetitive activity syndrome and its effects on the body).

Specifically, Defendant argues that Plaintiff failed to do his duty to investigate the injury to his left knee and determine its cause once he saw physicians in 2001.  See McCain Dep. 44:9-24 ("Q: And at the time that either Dr. Ogucci or Dr.

---

A: And arm and –

Q: At that time — when did you first take that medication?

A: You know I'm not sure. I probably took that medication a couple of years.

Q: Sir, was it a couple years prior to seeing Dr. O'Brien?

A: Dr. O'Brien, yes.

See McCain Dep. 41:16 - 42:7.

Herrington mentioned to you that you might have arthritis in your left knee, did they talk to you about what may have been causing or contributing to that? A: No. Q: Did you have any idea what might have been the source of the arthritic condition in your knee or the pain you were experiencing in your knee at that time? A: No. Q: Did you do any investigation to determine what might have been causing that? A: No. Q: Was there anything in your lifetime that you were doing other than working that could have been a cause or contributor to that problem? A: No."). Plaintiff clearly testified that no other work or activity could have contributed to the pain he experienced in his left knee.

Plaintiff saw Dr. Ogucci and Dr. Herrington sometime in 2001. At that time, Plaintiff knew that his left knee was experiencing severe pain, was informed by doctors that it might be arthritis, and though Plaintiff knew that the likely activity that could be causing the pain was his work, did nothing further to determine the source of his injury for the following two years.[6] Further, Defendant points out that Plaintiff was aware another co-worker, Mr. Hall, who also worked as a machinist, was experiencing problems with his knees prior to the onset of his

---

[6] See Pl.'s Opp'n Ex. 3 at 11-12, McCain Supp. Dep, dated 6/17/09 (Plaintiff stated that "sometime in 2003 . . . . I went to Dr. O'Brien, and he did injections in that [left] knee and told, you know, that at that time was the arthritis. And he commented about walking on the ballast rock and everything. Of course, he asked me where I worked; and he referenced that might be agitating it.").

knee-related pain.  <u>See</u> Def. Mot. Summ. J. 4 (citing McCain Dep. 25:3-5, 15-22).

Based on the testimony and medical records in the record, the Court finds that Plaintiff began experiencing pain in his left knee as early as 2001 and was aware or should have been aware that the pain to his left knee stemmed from his work activity.

Under these circumstances, Plaintiff's cause of action began to accrue starting in at least 2001, since the injury was discovered and the cause of the injury was discoverable (i.e., Plaintiff knew or should have known a cause of his injury) at that time.  Pursuant to the three-year applicable statute of limitations, Plaintiff's cause of action as to his left knee expired in 2004.  Plaintiff did not file this action until 2006. Therefore, Plaintiff's claims as to his left knee are time barred and Defendant's motion for summary judgment as to Plaintiff's left knee is granted.

2.   <u>Plaintiff's Right Knee</u>

Here, unlike the argument concerning the left knee, Defendant points to no specific facts of record, than once Defendant was informed by Dr. O'Brien that he had bilateral repetitive activity syndrome in his left knee, he was on notice of the injury to his right knee.  In opposition, Plaintiff explains that while his left knee experienced pain prior to January 30, 2003, his right knee did not have substantial pain

until 2004.

a.  Actual Injury

Plaintiff testified that the pain only began in his right knee following his left knee replacement surgery in 2004. See McCain Dep. 49:24-50:12 ("Q: I'm sorry, Mr. McCain, I'm just trying to talk to you about what your current symptoms are in your knees right now . . . . A: I have just pain, sharp pain and swelling sometimes in my right knee.  Q: And how long has that been going on?  A: Severely like it is now, a year.  Q:  And how about when you first might have experience pain less severely?  I don't know how else to –-  A: Are you talking about the right knee?  Q: Yeah.  A: It started right after I had my other knee replaced in 2004."); but see id. 51:3-16 ("Q: So in the early part of January of '03 or the early part of 2003, it is possible you might have been having pain in your knee?  A: Uh-huh.  Q: Your right knee?  A: Yeah. I don't recall that but that's –  Q: But you're not disputing it?  A: No. No. I wouldn't dispute Dr. O'Brien.  Q: Is it possible that you might have had pain in your right knee prior to going to see Dr. O'Brien?  A: I don't recall that. I don't recall it. I mean, I don't recall telling him that, but –  Q: So it's a possibility?  A: But he x-rayed it, so I must have told him.").

Since Plaintiff testified that his right knee did not cause him pain prior to 2004, and Defendant has not pointed to any facts of record stating otherwise, Defendant has failed to

show that no genuine issues of material fact exist as to whether Plaintiff knew or should have known of the injury to his right knee prior to January 27, 2003, or three years or more from the date he filed suit. See Def.'s Mot. Summ. J. Ex. C, O'Brien Medical Rec. (determining, after x-raying both knees, that Plaintiff was suffering from medial epicondylitis and degenerative joint disease in the left knee). Therefore, the Court need not address the second prong of the analysis, whether Plaintiff knew or should have known the cause of the injury.

Under these circumstances, Defendant's motion for summary judgment as to Plaintiff's right knee will be denied.

B.   Federal Preclusion[7]

Here, the Court must determine whether Plaintiff's claims brought under FELA as to his right knee are, as Defendant argues, federally precluded pursuant to the Federal Railroad Safety Act ("FRSA"). Plaintiff avers that when working as a machinist for Defendant he was exposed to repetitive occupational trauma as a result of "repetitive bending, twisting, crawling, stooping, and walking on uneven or unlevel ballast." See Compl. ¶¶ 8-9.

---

[7]     Concepts of preemption and preclusion, although intended to exclude similar kinds of claims, are analytically distinct. Preemption occurs when federal law displaces state law. Preclusion, on the other hand, is where one federal statute supersedes another federal statute. Miller, 159 Md. App. 162-63 ("The legal event triggered by a superseding [federal] statutory provision [in this case FRSA superseding FELA negligence claims], however, is issue preclusion, not preemption.").

Defendant argues that the Federal Railroad Safety Act ("FRSA") and the Federal Railroad Administration ("FRA") preclude Plaintiff's ballast claim as a matter of law.  <u>See</u> Def.'s Mot. Summ. J. 24.  Specifically, Defendant argues that, assuming the FRSA can preclude FELA claims, the FRSA ballast regulations cover Plaintiff's ballast claim with respect to "subject matter," thereby precluding Plaintiff's remaining claims.

In his deposition, Plaintiff testified that specified tracks existed alongside the trains for the employees' use when servicing the trains.  <u>See</u> Def.'s Mot. Summ. J. Ex. B. 84-85. Plaintiff further testified that, in 2002, Defendant removed the ballast after many complaints from the employees and resurfaced the area with asphalt.  <u>See</u> Pl.'s Opp'n Ex. 2 at 6:21-7:4 ("Q: Did you ever make any complaints about walking on ballast?  A: Yes, in our safety meetings.  Not only I brought that up but a lot of the other employees brought it up.  We tried for years to get better walking conditions out in the test-outfield, yes; and they finally did asphalt that area.").  Plaintiff stated that he felt as though the asphalt was an easier walking surface since it was level, as opposed to the ballast which was rocky.  <u>See</u> Def.'s Mot. Summ. J. Ex. B. 84-85.

To determine whether Plaintiff's injury claims related to the subject matter of ballast size and condition are federally precluded, the Court must consider the relevant federal statutes. FELA provides railroad employees with a federal private cause of

action for injuries based on the employer's negligence.  <u>See</u> 45 U.S.C. § 51; <u>see also</u> <u>Norfolk S. Ry. Co. v. Sorrell</u>, 549 U.S. 158, 165-66 (2007) ("Absent express language to the contrary, the elements of a FELA claim are determined by reference to the common law.").[8]

On the other hand, the FRSA provides railroad safety regulations as pertaining to "railroad operations . . . and railroad-related accidents and incidents."  49 U.S.C. § 20101; <u>see also</u> <u>CSX Transp. v. Easterwood</u>, 507 U.S. 658 (1993) (holding that FRSA preempts state law negligence claims and precludes federal injury claims based on negligence under FELA); <u>Waymire v. Norfolk S. & W. Ry. Co.</u>, 218 F.3d 773 (7th Cir. 2000) (finding that the FRSA preempts state law and precludes federal negligence claims brought under FELA).

The purpose of FRSA "is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."  49 U.S.C. § 20101.  The Secretary of Transportation is authorized thereunder to "prescribe regulations . . . for every area of railroad safety . . . ."  <u>Rooney v. City of Phila.</u>, 623 F. Supp. 2d 644, 663 (E.D. Pa. 2009) (citing 49 U.S.C. §

_____

[8]    <u>See</u> <u>CSX Transp., Inc. v. Miller</u>, 159 Md. App. 123, 128-29 (Md. Ct. Spec. App. 2004) ("The FELA law is a hybrid. It hovers ambivalently between workers' compensation law and the common law tort of negligence. It is neither, but it partakes of characteristics of both.").

20103(a)).[9]  However, the FRSA only explicitly preempts state

laws, regulations and orders.  It is silent as to whether "other

federal safety standards" are precluded.  <u>Nickels v. Grand Trunk

W. R.R.</u>, 560 F.3d 426, 429 (6th Cir. 2009) (currently on appeal

to the Supreme Court).[10]

The Sixth Circuit recently held that a railroad

employees negligence claims brought pursuant to FELA were

"precluded by the FRSA if they would have been preempted if

brought by a non-employee under state law."  <u>See</u> <u>Nickels</u>, 560

---

[9]      Though the FRSA was amended in 2007, under 49 U.S.C.
20106, those amendments only apply to "activities or events"
(e.g., injuries) that occurred or were caused after January 18,
2002.  <u>Kurns v. Chesterton</u>, 2009 U.S. Dist. LEXIS 7757, *15-16
(Goldberg, J.) (E.D. Pa. 2009).  Here, since Plaintiff's
remaining right knee claim began to run after 2002, the FRSA
amendments apply.

[10]      However, § 20106 of the FRSA, entitled "Railroad
Preemption Clarification," is an express preemption provision
that does not preempt all state-based negligence actions:

    (b) Clarification Regarding State Law Causes of Action –
    (1) Nothing in this section shall be construed to preempt
    an action under state law seeking damages for personal
    injury, death, or property damages alleging that a party
    --
    (A) has failed to comply with the federal standard of
    care established by a regulation or order issued by the
    Secretary of Transportation . . . ;
    (B) has failed to comply with its own plan, rule or
    standard that it created pursuant to a regulation or
    order issued by either of the Secretaries; or
    (C) has failed to comply with a state law, regulation or
    order that is not incompatible with subsection (a)(2).
    (2) This subsection shall apply to all pending state law
    causes of action arising from events or activities . . .
    .

49 U.S.C. § 20106.

F.3d at 430.  There, the plaintiff brought an action against his employer for repetitive occupational trauma that caused injury to his knees based on oversized track ballast.  Id.  The Sixth Circuit analyzed whether the FRSA precludes a FELA claim if it would have preempted the same claim brought "as a state-law negligence action" and whether plaintiff's claims were of a subject matter preempted by FRSA.  Id.

The Nickels court found that, in order to meet Congress' purpose of uniformity, the FRSA "can be achieved only if [federal rail safety regulations] are applied similarly to a FELA plaintiff's negligence claims and a non-railroad employee plaintiff's state law negligence claim."  Id. (citing Lane v. R.A. Sims, Jr., Inc., 241 F.3d 439, 443 (5th Cir. 2001); see also Waymire, 218 F.3d at 776; Dickerson v. Staten Trucking, Inc., 428 F. Supp. 2d 909, 913-14 (E.D. Ark. 2006); Major v. CSX Transp., Inc., 278 F. Supp. 2d 597 608-10 (D. Md. 2003); Miller, 159 Md. App. at 123).  Further, the court found that where the FRSA regulated ballast tracking and preempted negligence claims based on the nature and size of ballast, the plaintiff's claims were precluded under FELA.  Miller, 560 F.3d at 430-31 (finding that FRSA's preemption provision covered state law negligence claims where "the Secretary has prescribed a regulation or issued an order 'covering the subject matter of the State requirement'") (citing 49 U.S.C. § 20106).

The FRSA regulates ballast tracking and provides that:

> Unless it is otherwise structurally supported, all track
> shall be supported by material which will –
> (a) Transmit and distribute the load of the track and
> railroad rolling equipment to the subgrade; (b) Restrain
> the track laterally, longitudinally, and vertically under
> dynamic loads imposed by railroad rolling equipment and
> thermal stress exerted by the rails; and (c) Provide
> adequate drainage for the track; and (d) Maintain proper
> track crosslevel, surface, and alinement.

49 C.F.R. § 213.103. The <u>Nickels</u> court explicitly found that

"the regulation substantially subsumes the issue of ballast

size." 560 F.3d at 430.

Here, Plaintiff avers that injury to his knees arose

from "squatting and bending, getting in awkward positions to work

and walking on ballast rock, climbing up and down locomotives."

<u>See</u> McCain Dep. 14:23-24.[11] During his time working for

Defendant, Plaintiff was a machinist who worked primarily in

three areas: in a brake shoe job,[12] lead worker on the test-out

---

[11]    <u>See also</u> McCain Dep. 14:19-15:3 ("Q: Can you tell me
what it is about your job or your job duties that you think
caused or contributed to the development of the problems in your
knees? A: Well, it would probably be a number of things. The
squatting and bending, getting in awkward positions to work and
walking on ballast rock, climbing up and down locomotives. And
climbing on a locomotive is much different than climbing stairs.
It is almost a direct straight up and straight down climb. Just
daily things we had to do that would attribute to that.").

[12]    In his deposition, Plaintiff explained that the brake
shoe job was like a service pit for the locomotives, during which
he would have to walk back and forth along a table to inspect the
underbelly of the locomotive (e.g., axles, brake shoes) resting
on the track. <u>See</u> McCain Dep. 72-78 ("Q: So it wasn't — that job
didn't necessarily involve a lot of repetitive bending up and
down, right, or squatting up and down? A: I would say it did
involve some, yes."). Plaintiff worked on the brake shoe job for
"three, four years" during his employment with Defendant which
spanned from 1986 through 2004. <u>Id.</u> at 21:17-19 (noting that

field,[13] oil and water job[14] and hostler-type duties.  See id. 68:1-5 (noting that a hostler was required to move a locomotive, which required repetitive climbing up and down ladders).

Nickels is distinguishable.  In Nickels, the Court found that the FRSA regulated ballast size in regards to its placement on the train tracks.  560 F.3d 430-31.  Since the ballast was used to stabilize the train tracks, it was regulated

---

Plaintiff spent eighty percent of his time on the brake shoe job inside the shop that was paved and twenty percent of his time moving locomotives that required walking on ballast).  During his time working on the brake shoe job, Plaintiff was often in the "ready field," where the locomotives that had been serviced would be put, which had ballast rock until it was paved with asphalt sometime around 1999.  Id. at 84:15-25; 85:16-24 ("Q: Before they paved it, what kind of rock was there?  Was there walking stone there?  A: No, there wasn't.  Q: What kind of rock was it?  A: Ballast rock.  Q: How big was the rock?  A: Some of it probably as big as this can.  Q: As a soda can?  A: Yeah, and some smaller.").  Plaintiff also testified that ballast tracks had to be walked across in order to get the walking path provided to employees was likely a dirt path, not ballast rock.  Id. at 88.

[13]    Plaintiff stated that he worked in the test-out position for roughly eight or nine years, which was located in the service center, but involved a significant amount of walking (also on ballast rock) and climbing.  See McCain Dep. 15:24 - 17:10; 95:16-18; 99:21-100:1 ("A: If you have five or six locomotives and you got to dig them all out of here, it takes time and a lot of climbing, getting up and down on different locomotives.  Get them back in the hole, get off these, walk over here (indicating) and get on this one, climb up on this one, and move it to wherever you need it.").  In this position, Plaintiff would build between ten and twelve trains in an eight-hour shift.  See McCain Dep. 101.

[14]    Plaintiff testified that he worked on the oil and water job for a short period of time, however it involved "a significant amount of bending and stooping" with a "heavy hose" full of oil.  See McCain Dep. 96:11-13, 13-15 (noting that this job was completed inside the facility where there was no ballast rock).

under FRSA § 213.103.  Id.  By contrast here, Plaintiff does not

alone contend that the ballast was the sole cause of his

injuries.  Specifically, Plaintiff stated that his injuries were

likely also caused by repetitive squatting and bending and

climbing up and down locomotive ladders.  In fact, Plaintiff

argues that, though the ballast rock contributed to his injuries,

his time on the trackside walkways contributed to his injured

knees.  See id., at 433-34 (Rogers, J., dissenting) ("Nothing in

49 C.F.R. § 213.103 or any related regulations addresses the

issue of trackside walkways and ballast size.  The regulations

require adequate support for the trains, and advert in no way to

the nature of a walking surface.").[15]

        Under these circumstances, the Court finds that while

Plaintiff's claims based on the nature and size of the track

ballast are precluded, see Nickels, his claims based on

repetitive "squatting, bending and climbing up and down

locomotive" ladders are not, under the applicable FRSA

regulation, § 213.103.[16]  Therefore, Plaintiff's FELA negligence

_____

        [15]    The only FRSA provision regulating walkways is §
213.37(c), which provides that vegetation must be controlled so
as not to interfere with "employees' trackside duties."  Id. at
434 (Rogers, J., dissenting); but see Mo. Pac. R.R. Co. v. R.R.
Comm'n of Tx., 833 F.2d 570, 574 (5th Cir. 1987) (finding that
FELA relief would be precluded if a "walkway requirement or other
safety regulation that hindered or prevented a railroad from
complying simultaneously with an FRA regulation designed to
enhance safety in a different area").

        [16]    Plaintiff has also asserted that other theories of
liability exist (i.e., Defendant failed to adequately warn the

claims are not precluded by FRSA regulations and Defendant's motion for summary judgment as to Plaintiff's right knee claims is granted in part and denied in part.


**V.** **<u>CONCLUSION</u>**

For the reasons set for above, Defendant's motion for summary judgment will be granted in part and denied in part.

---

employees regarding work-related dangers, failed to provide an ergonomic safety program, and failed to provide adequate walking surfaces). <u>See</u> Pl.'s Opp'n *22.